**Don CURRY, Plaintiff,**

v.

**Aurelia PUCINSKI, Defendant.**

**No. 93 C 5923.**

United States District Court,
N.D. Illinois,
Eastern Division.

Oct. 5, 1994.

Georgia A. Vlamis and Lauren L. McFarlane of Wildman, Harrold, Allen & Dixon, Chicago, IL, for plaintiff.

Jack O'Malley, State's Atty. of Cook Co., and Douglas S. Steffenson, Asst. State's Atty., for defendant.

### MEMORANDUM OPINION AND ORDER

SHADUR, Senior District Judge.

Pontiac Correctional Center inmate Don Curry ("Curry") brings this action under 42 U.S.C. § 1983 ("Section 1983"), contending that Cook County Circuit Court Clerk Aurelia Pucinski ("Pucinski") violated Curry's constitutional right of access to the courts by failing to provide records that were necessary for a meaningful and timely appeal. Pucinski has moved for summary judg-

ment under Fed.R.Civ.P. ("Rule") 56,[1] both sides have complied with this District Court's General Rule ("GR") 12(m) and 12(n),[2] and the motion is now briefed and ready for decision. For the reasons stated in this memorandum opinion and order, Pucinski's motion is denied.

### Facts [3]

On August 24, 1990 Curry was convicted of criminal sexual assault in the Circuit Court of Cook County, Illinois, a conviction on which he is now serving a 30–year prison term (P. 12(n)(2) ¶¶ 2–3; D. Ex. A, Att. 6). Curry then began what would become a series of appeals by hiring new counsel and filing a notice of appeal (D. Ex. A, Att. 2).

Illinois guarantees every convicted criminal defendant the right to one appeal (Ill. Const. art. 6, §§ 4(b) and 6). It requires the clerk of the circuit court, upon the filing of a notice of appeal, to prepare and deliver the "record on appeal" to the reviewing court or, upon request, to the appellant (Ill.S.Ct. Rule ("Ill.Rule") 608).[4] Rule 608 lists 15 items that must be included in every criminal appellate record and provides an opportunity for the parties to designate additional materials. Among the 15 mandated items are "in-

structions offered and given, and the objections and rulings thereon"[5] and "communications from the jury during deliberations."

On December 4, 1990 Pucinski mailed to Curry's then attorney E. Steven Yonover ("Yonover") copies of what she described in her signed cover letter as Curry's "COMMON LAW RECORD AND EXHIBITS." Yonover acknowledged receipt on December 16 (D. Ex. A, Att. 3). Identical letters (one with and one without Pucinski's signature) accompanied later mailings to Yonover of a "REPORT OF PROCEEDINGS, ONLY" and of a "SUPPLEMENTAL RECORD" on January 8 and August 2, 1991. Yonover acknowledged receipt of those mailings on January 14 and August 2 respectively (id. Att. 4 and 5).

Curry now claims that the materials sent to his attorney failed to include a number of important papers, and he therefore accuses Pucinski of denying him access to his file and thus to the courts. For proof Curry offers a list prepared by his present attorney (not Yonover) of some 52 documents produced from Curry's file by the Clerk's office in this litigation (P.Ex. 3A). Curry has circled 33 items that he says were not included in the original record (id.).[6] Among those items

---

1. Familiar Rule 56 principles impose on movant Pucinski the burden of establishing the lack of a genuine issue of material fact (Celotex Corp. v. Catrett, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986)). For that purpose this Court is "not required to draw every conceivable inference from the record—only those inferences that are reasonable"—in the light most favorable to nonmovant Curry (Bank Leumi Le–Israel, B.M. v. Lee, 928 F.2d 232, 236 (7th Cir.1991) and cases cited there).

2. GR 12 was designed to facilitate the resolution of Rule 56 motions by highlighting the existence or nonexistence of factual disputes. GR 12(M) requires each Rule 56 movant to submit a statement of assertedly uncontested facts, with citations to the record in support of each such fact. GR 12(N) requires each nonmovant to respond point by point, with citations to the record in support of (1) any claimed disputes as to the movant's version of the facts and (2) any additional facts that the nonmovant chooses to assert. Curry's GR 12(N)(2) submission is cited "P. 12(n)(2) ¶ —."

3. What follows is not of course a set of this Court's factual findings, but rather a scenario that credits the pro-Curry evidence with the re-

quired reasonable inferences. Hence the account generally omits such qualifying terms as "allegedly" and "Curry claims" or the like.

4. Ill.Rule 612 identifies the civil appeals rules that apply to criminal appeals "insofar as appropriate." For present purposes those rules include (but are not limited to) Ill.Rules 324, 325, 329 and 331.

5. Ill.Rule 451(c) requires instructions in a criminal case to be "tendered, settled, and given in accordance with section 2–1107 of the Code of Civil Procedure" (735 ILCS 5/2–1107). Section 2–1107(b) provides that "originals and copies of all instructions, whether given, modified or refused, shall be filed as a part of the proceedings in the cause." It is a defendant-appellant's burden to provide a record containing the instructions tendered, else any issue as to the trial court's refusal to give those instructions is generally waived (People v. Leonard, 171 Ill.App.3d 380, 388–89, 122 Ill.Dec. 138, 143, 526 N.E.2d 397, 402 (2d Dist.1988)).

6. Twenty-seven of the circled items antedated Pucinski's initial December 4, 1990 mailing:

are written jury instructions and a note from the jury foreperson to the trial judge—documents that would unquestionably be potential grist for the appellate mill.

Pucinski responds by offering an affidavit of the Deputy Clerk and copies of the three letters acknowledged by Yonover (D. Ex. A and Att. 3–5). Those materials establish that *something* was sent to Curry's lawyer on three occasions. But it is the *contents* of the mailings that Curry disputes. Pucinski offers no proof from which this Court can properly conclude that the "COMMON LAW RECORD AND EXHIBITS," "REPORT OF PROCEEDINGS, ONLY" and "SUPPLEMENTAL RECORD" included the written jury instructions, the foreperson's note or other items circled on Curry's list. Absent such proof this Court must credit Curry's version of events.[7]

On March 26, 1992 Curry's conviction and sentence were affirmed (D. Ex. A, Att. 2). Soon thereafter, and proceeding without assistance of counsel (Yonover's representation ceased in January 1992, P.Ex. 3), Curry began to seek additional records that he planned to use in bringing suit under the Illinois Post–Conviction Hearing Act ("Post–Conviction Act," 725 ILCS 5/122–1 to 122–8) (P. 12(n)(2) ¶6; P.Ex. 3). That search focused on obtaining copies of police reports that Curry supposed (incorrectly) to be in his file. Thus he filed an Illinois Freedom of Information Act ("FOIA," 5 ILCS 140/1 to 140/10) request directed at Pucinski asking for "Common Law Records ... includ[ing] police reports" (P. 12(n)(2) ¶5; P.Ex. 1). After the FOIA request was denied (P. 12(n)(2) ¶7; P.Ex. 1), Curry petitioned the Circuit Court unsuccessfully for a writ of mandamus ordering Pucinski to turn over copies of all relevant "common law records and police reports" (P. 12(n)(2) ¶¶10–11; D. Ex. A, Att. 1; P. Exs. 1 and 2). That relief was denied in an April 14, 1993 order simply reading "DENIED" (P.Ex. 2). Curry also telephoned Pucinski's office and caused his parents and wife to make similar requests, all to no avail (P. 12(n)(2) ¶9). Curry did not invoke procedures set out in the Post–Con-

| Item No. | Item |
|---|---|
| 1–6 | 6 Prisoner Data Sheets; |
| 7–15 | 9 Handwritten Character References; |
| 16 | Letter Verifying Employment; |
| 17–18 | 2 Records Re: 1981 Oldsmobile; |
| 19 | Complaint for Preliminary Examination; |
| 20 | Complaint; |
| 21 | Information; |
| 22 | Information Indictment Return Sheet; |
| 23 | "Fifteen pages of Jury Instructions; 3 Jury Verdict forms (2 signed)"; |
| 24 | "15 pages of Jury Instructions (with handwritten notes regarding objections and whether or not the instruction was given) plus jury verdict forms"; |
| 25 | "Handwritten note from the Foreperson of the Jury to Judge Neville, requesting that a portion of the transcript pertaining to testimony of Dr. Bajo be read to the jury"; |
| 26 | People's Exhibits 1A, 1B, 1C, 1D, 1E, 2A, 2B, 2C, 2D, 2E, 3A, 3B, 3C, 3D, 3E, 3F, 3G, 3H, 3I; and |
| 27 | Defendant's Exhibits 2, 3, 4, 5, 6, 7. |
| 28 | Docket Sheets through 10/26/93; |
| 29 | Acknowledgment Letters for Common Law Record and Exhibits, Report of Proceedings and Supplemental Record; |
| 30 | "Undated Appellate checklist (notes include 'Common Law Record prepared 12/4/90')"; |
| 31 | Notice of Receipt of Transcript; |
| 32 | Notice of Appearance (Yonover); and |
| 33 | "Aurelia Pucinski's 12/4/90 certification of a complete copy of one volume record consisting of the common law record and exhibits, only." |

Six of the circled items could not have been in Curry's file at the time the initial record was compiled:

7. It is of course possible that the result here might have been otherwise if on the current motion Pucinski had submitted a copy of the record on appeal or other documents apparently in her possession. Under Ill.Rule 331 the record on appeal is returned to the clerk of the trial court after final decision of the reviewing court. In Curry's case that occurred on March 26, 1992 (D. Ex. A, Att. 2). Because the record is arranged chronologically and paginated (Ill.Rule 324), omissions should be obvious. But the very fact that items within Pucinski's control were *not* tendered to this Court fortifies the inference in Curry's favor.

viction Act for accessing records in a post-conviction proceeding.[8]

On June 4, 1993 the Illinois Supreme Court denied leave to appeal from the affirmance of Curry's conviction (D. Ex. A, Att. 6). On August 24, 1993 Curry's time for filing a post-conviction petition expired (P. 12(n)(2) ¶ 12; P.Ex. 3). On May 27, 1994 Curry nevertheless filed such a petition (D. Ex. A, Att. 6), which was denied July 6 (P. 12(n)(2) ¶ 13).

### Procedural Background

On September 27, 1993 Curry tendered his pro se Complaint against Pucinski in both her official and individual capacities. After this Court conducted its threshold review for non-"frivolousness" in the legal sense defined in *Neitzke v. Williams*, 490 U.S. 319, 324, 109 S.Ct. 1827, 1831, 104 L.Ed.2d 338 (1989) and refined in *Denton v. Hernandez*, —— U.S. ——, —— – ——, 112 S.Ct. 1728, 1733–34, 118 L.Ed.2d 340 (1992), it appointed counsel to represent Curry. That appointment generated a First Amended Complaint ("FAC"), to which Pucinski responded.

Both Pucinski's original response and her Amended Answer failed to comply with the "clear roadmap" set out in Rule 8(b) (*Gilbert v. Johnston*, 127 F.R.D. 145, 146 (N.D.Ill. 1989)), and after fair warning this Court deemed FAC ¶¶ 8–13 and 15–16 to have been admitted. That being so, this Court must credit Curry's allegation that the records he sought in his FOIA request "were needed so that [he] could prepare an effective and timely petition for post-conviction relief" (FAC ¶ 10).

On August 31, 1994 this Court dismissed the FAC to the extent that it sought damages against Pucinski in her *official* capacity (see *Drury v. County of McLean*, 89 Ill.2d 417, 422–24, 60 Ill.Dec. 624, 626–27, 433 N.E.2d 666, 668–69 (1982), confirming the status of county clerks as members of State government rather than of any local govern-ment, a status that automatically triggers Eleventh Amendment immunity). This opinion therefore addresses only Pucinski's individual liability.

### Curry's Substantive Rights

█ As an inmate Curry has a fundamental constitutional right of meaningful access to the courts. That right requires prison officials to provide all inmates with effective access to decent law libraries or adequate assistance from persons trained in the law—or perhaps to some alternative means of achieving the same goal (*Bounds v. Smith*, 430 U.S. 817, 828, 97 S.Ct. 1491, 1498, 52 L.Ed.2d 72 (1977); *Alston v. DeBruyn*, 13 F.3d 1036, 1040–42 (7th Cir.1994); *Corgain v. Miller*, 708 F.2d 1241, 1247–51 (7th Cir. 1983)). Because every case comprises two parts—law and fact—the concept of meaningful access necessarily embodies a requirement that inmates be provided access to their underlying factual records (cf. *Rush v. United States*, 559 F.2d 455, 458–59 (7th Cir.1977) (per curiam) (meaningful access "is impossible without a trial transcript or adequate substitute," and a state must bear the cost of providing trial records to defendants who cannot afford them)). Although no Seventh Circuit decision has ruled directly on the issue, *Allen v. Duckworth*, 6 F.3d 458, 459–60 (7th Cir.1993) (citations omitted) spoke of the concept that arbitrary deprivations of a state-granted right of appeal violate due process:

We can assume, as a number of cases have held, though none in this circuit, that excessive delay in the processing of a criminal defendant's state appeal can be a denial of due process of law. The defendant has no federal constitutional right to an appeal, but a state is not permitted with one hand to grant such a right and with the other to take it away in an arbitrary fashion. . . .[9]

---

**8.** Proceedings under the Post–Conviction Act are initiated by filing a verified petition with the clerk of the court alleging a substantial denial of constitutional rights in the course of a conviction (725 ILCS 5/122–1). Petitioner must attach affidavits, records or other evidence supporting his or her allegations, or a statement explaining why such documents are not attached (715 ILCS 5/122–2). If convinced that there is a need to do so, the court may then examine the court file in the underlying criminal case (725 ILCS 5/122–2.1).

**9.** [Footnote by this Court] *Allen* was authored by Judge Posner on the last day before he became Chief Judge of the Circuit, and the opinion spoke

■ This opinion therefore proceeds on the premise that our Court of Appeals would agree with the comparable analysis in *Rheuark v. Shaw*, 628 F.2d 297, 302 (5th Cir. 1980) (citations omitted):

The Constitution does not require the states to afford a right to appellate review of a criminal conviction. Nevertheless, when a state provides a right to appeal, it must meet the requirements of due process and equal protection. We are convinced that due process can be denied by any substantial retardation of the appellate process, including an excessive delay in the furnishing of a transcription of testimony necessary for completion of an appellate record.[10]

In those terms the Constitution speaks not only to wardens charged with regulating prison libraries but also to clerks responsible for providing inmates access to their files, requiring that the handling of those important records be free from arbitrary interference and unreasonable delay. Where the constitutional violation is "minor and incidental" an inmate must show prejudice, a requirement that is waived where the restriction is "direct, substantial and continuous" (*Jenkins v. Lane*, 977 F.2d 266, 268–69 (7th Cir.1992) (per curiam)). Like any other state actor, Pucinski becomes liable under Section 1983 for violating Curry's right of access to the courts if Curry can show[11] that Pucinski deprived him of records that were necessary for meaningful and timely appeal.

■ Curry has created a genuine issue of material fact as to whether several critical documents were incorporated into his record on appeal. Some communications between judge and jury during deliberations may constitute reversible error (*People v. Kamide*, 254 Ill.App.3d 67, 71–72, 193 Ill.Dec. 304, 308, 626 N.E.2d 337, 341 (2d Dist.1993)). By failing to incorporate the foreperson's note into the record Pucinski deprived Curry of the opportunity to interpose any challenge of that nature. Jury instructions can also provide grounds for challenging a conviction, and in Illinois an appellant must tender both the given and refused instructions to preserve the issue, so that any appellant whose only record is the trial transcript is generally foreclosed from raising any contentions in that respect (see, e.g., *Kamide*, 254 Ill. App.3d at 72–74, 193 Ill.Dec. at 308–09, 626 N.E.2d at 341–42; *Leonard*, 171 Ill.App.3d at 388–89, 122 Ill.Dec. at 143–44, 526 N.E.2d at 402–03). Pucinski's omission from the record of "15 pages of Jury Instructions (with handwritten notes regarding objections and whether or not the instruction was given) plus jury verdict forms" created precisely that risk.

This Court of course recognizes the speculative nature of what has just been said. But that problem is inherent in the nature of Pucinski's omission. If in order to survive a threshold summary judgment Curry were required to identify the arguments that he could have made based on documents that Pucinski has failed to deliver, Curry would be embroiled in a Catch–22 dilemma: How can he do so until Pucinski provides the missing documents so he can review them? Pucinski cannot thus bootstrap herself into a

unanimously for him and his fellow panel members, then Chief Judge Bauer and Circuit Judge Manion. It is also worth noting that the opinion had to be circulated to the full court under Circuit Rule 40(f) because it created a conflict with another circuit on another issue. No other judge of the Court of Appeals called for en banc hearing. Though of course that is not the same as if all the judges had expressly joined in the opinion as written, this Court's experience in sitting by designation with our Court of Appeals is that such circulation often leads to suggestions for revision of an opinion if *any* judge finds any portion of it troublesome.

10. [Footnote by this Court] At least the First, Second, Third, Ninth and Tenth Circuits join the Fifth in holding in various contexts that where a

state guarantees the right to a direct appeal it is required to accord the defendant due process in the course of implementing that guaranty (*United States v. Pratt*, 645 F.2d 89, 91 (1st Cir.1981); *Cody v. Henderson*, 936 F.2d 715, 719 (2d Cir. 1991); *Burkett v. Cunningham*, 826 F.2d 1208, 1221 (3d Cir.1987); *Coe v. Thurman*, 922 F.2d 528, 530 (9th Cir.1990); *DeLancy v. Caldwell*, 741 F.2d 1246 (10th Cir.1984) (per curiam)).

11. More accurately, Curry need not "show" (that is, prove) anything on the current motion. Instead his only burden is to raise a genuine issue of material fact. Though this opinion may speak in terms of what Curry must show or prove (because the cases most frequently do so), this Court has in fact applied the lesser Rule 56 burden throughout.

Rule 56 victory by reason of her own delinquency. Consequently Curry must survive at this stage of the proceedings unless Pucinski can prevail on one of the grounds that she advances.

### Pucinski's Contentions

Pucinski moves for summary judgment on three grounds that can be described loosely as immunity, res judicata and mootness. This opinion addresses those arguments in turn.

### Immunity

First Pucinski claims that she is entitled to immunity from this lawsuit under the Eleventh Amendment. Because she has already been held immune from a damages claim in her official capacity, the only remaining immunity issues are whether the Eleventh Amendment protects her in an individual capacity against an award of damages or in an official capacity against injunctive relief. It does neither.

■ Of course Pucinski's effort to invoke the Eleventh Amendment as an *individual* is entirely misguided—to that extent *Ex parte Young*, 209 U.S. 123, 159–60, 28 S.Ct. 441, 453–54, 52 L.Ed. 714 (1908) remains alive and well in Washington (and hence in Chicago as well). To the extent that any damages to be awarded will run against Pucinski individually, the Eleventh Amendment is not implicated at all. But the potential for a different source of absolute immunity requires at least a brief discussion.

■ *Antoine v. Byers & Anderson, Inc.*, — U.S. —, —, 113 S.Ct. 2167, 2171, 124 L.Ed.2d 391 (1993) has unanimously reconfirmed the Supreme Court's functional approach to absolute immunity: That level of protection—which is conferred upon judges in the exercise of their judicial functions— also extends to auxiliary personnel whose activities involve "judgments ... 'functional[ly] comparab[le]' to those of judges—that is, ... they, too, 'exercise a discretionary judgment' as a part of their function." *Antoine* held that no court reporter is so insulated because his or her activity of recording court proceedings in their entirety is not functionally comparable to that of judges—

such reporters are afforded no discretion in carrying out their duties. Thus whether Pucinski is entitled to absolute immunity here turns on the nature of her assigned task: If it required the exercise of discretion functionally comparable to judicial discretion, she gets it; if it was ministerial, she does not.

■ Illinois law establishes the means by which records are bound for appeal and directs the clerk of the trial court to assemble from the court file such materials as are designated by the parties and by court rule. Illinois affords the clerk no discretion in that task. What force guided Pucinski's hand as she culled through the criminal case file, selecting certain items and bypassing others, is unclear: Nearly all of the materials contained in the file were called for by Ill.Rule 608 and should have been included in the record on appeal. What is certain is that the assignment was designed to be purely ministerial. In performing such a non-discretionary function, Pucinski was disentitled to any mantle of absolute immunity and is subject to suit in her personal capacity.

■ To the extent that Curry seeks injunctive relief in the form of an order directing Pucinski to provide Curry with copies of his complete file, any claim of immunity is equally unavailable. Indeed, the seminal decision in *Ex parte Young* upheld the granting of just such prospective injunctive relief against state officials charged with having violated the Fourteenth Amendment. Nor does this case call for the type of equitable relief that would involve an indirect raid on the state treasury, such as that held in *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974) to be an impermissible end run around the Eleventh Amendment.

### Res Judicata

Next Pucinski claims that this suit is barred by the principles of "res judicata," pointing to the Circuit Court's denial of Curry's petition for a writ of mandamus. This Court has always preferred to minimize potential confusion in this area of the law by employing the more precise labels of "issue preclusion" and "claim preclusion," as set out in *Migra v. Warren City School Dist. Bd. of*

*Educ.,* 465 U.S. 75, 77 n. 1, 104 S.Ct. 892, 894 n. 1, 79 L.Ed.2d 56 (1984) (citations omitted):

> Issue preclusion refers to the effect of a judgment in foreclosing relitigation of a matter that has been litigated and decided. This effect also is referred to as direct or collateral estoppel. Claim preclusion refers to the effect of a judgment in foreclosing litigation of a matter that never has been litigated, because of a determination that it should have been advanced in an earlier suit. Claim preclusion therefore encompasses the law of merger and bar.

It will do so here as well.

As for claim preclusion, there is more than one reason to deny that effect to Curry's unsuccessful attempt to force production of documents under FOIA by invoking the extraordinary mandamus remedy. For one thing, the wholly unexplained basis for that denial [12] negates any certainty that the denial was on the substantive merits of the claim.[13] That being so, claim preclusion does not apply (*Hiley v. United States,* 807 F.2d 623, 625–26 (7th Cir.1986); *United States v. Dean,* 752 F.2d 535, 541–42 (11th Cir.1985) and cases and treatise cited there). For another thing, no claim for damages *could* have been advanced in the earlier mandamus action—again scotching any argument that Curry's current damages action under Section 1983 was somehow precluded by dismissal of that earlier action.

As for issue preclusion, the elevated demands imposed on a plaintiff to obtain success via mandamus render that doctrine unavailable to Pucinski in this action (*Stauble v. Warrob, Inc.,* 977 F.2d 690, 693 (1st Cir. 1992) and cases cited there; cf. such cases applying the same concept of differing standards, but not in a mandamus context, as *United States v. Ryan,* 810 F.2d 650, 654–55 (7th Cir.1987); *Kunzelman v. Thompson,* 799 F.2d 1172, 1176 (7th Cir.1986); *Guenther v. Holmgreen,* 738 F.2d 879, 888–89 (7th Cir. 1984)). And even to the extent that the two

cases have partially shared a common goal (delivery of the omitted documents to Curry through a writ of mandamus or an injunction), the already-referred-to uncertainty as to the basis for the Circuit Court's denial of mandamus forecloses Pucinski's recourse to issue preclusion as well as to claim preclusion (see, e.g., *Hiley* ).

*Mootness*

Finally Pucinski argues that Curry has in fact received his records, rendering this action moot. Pucinski points to her three mailings (in late 1990 and in 1991) to support that position. But this opinion has already explained that there is a genuine issue of material fact as to whether those records included several important documents, most importantly the written jury instructions and proffered instructions and a note from the jury foreperson to the trial judge. What has been tendered to this Court on the current motion does not permit a conclusion as a matter of law that the records Curry denies he ever received were in fact delivered to him or his attorney.

*Conclusion*

There are genuine issues of material fact that foreclose any determination *as a matter of law* that Pucinski has not deprived Curry of his constitutional right of access to the courts. It remains entirely possible on the record before this Court that Pucinski is liable to Curry under Section 1983 for damages in her personal capacity and for injunctive relief in her official capacity. Pucinski's motion for summary judgment is denied. This action has previously been set for a status hearing at 9 a.m. October 14, 1994, at which time both sides' counsel should come prepared to discuss procedures to ready the case for a prompt trial.

---

**12.** All that appears in the Circuit Court records are a docket printout reading "Writ of Mandamus denied" and an equally bobtailed certified report reflecting that disposition (P.Ex. 2).

**13.** Mandamus proceedings face materially higher burdens than other legal actions. And among

the special hurdles such a case must overcome is the need to show the unavailability of any other adequate remedy—of course, any denial of the writ for that reason would provide the very antithesis of any basis for claim preclusion.