COUNTRY MUTUAL INSURANCE COMPANY, Plaintiff–Appellant,

v.

AMERICAN FARM BUREAU FEDERA-TION and American Agricultural In-surance Company, Defendants–Appel-lees.

No. 88–2892.

United States Court of Appeals, Seventh Circuit.

Argued May 18, 1989.

Decided June 9, 1989.

Samuel Fifer, Scott F. Turow, Patricia W. Hatamyar, Sonnenschein, Carlin, Nath & Rosenthal, Chicago, Ill., Jerome Weiss, Washington, D.C., for plaintiff-appellant.

Michael R. Feagley, Mayer, Brown & Platt, Chicago, Ill., Richard J. Favretto and Kathy A. Oberly, Washington, D.C., for defendants-appellees.

Before WOOD, Jr., EASTERBROOK, and KANNE, Circuit Judges.

EASTERBROOK, Circuit Judge.

Who owns the trademark FARM BUREAU INSURANCE? The American Farm Bureau Federation believes that it does. The Fed-eration is the national organization of many groups called Farm Bureaus. Until recent-

ly, however, the mark was registered to the American Agricultural Insurance Company, a reinsurer owned by other agricultural insurers that licensed its shareholders to sell FARM BUREAU INSURANCE. The Federation believes that American is its licensee and registered the mark in error.

In September 1983 the president and secretary of American, who filled the same offices at the Federation, surrendered American's registrations and acknowledged that the Federation had owned the FARM BUREAU mark since 1919. The Federation then filed applications to register FARM BUREAU and FARM BUREAU INSURANCE in its own name. Country Mutual Insurance Company, one of American's shareholders and licensees, did not take this turn of events lying down. It arranged for an affiliate to oppose the Federation's applications in the Patent and Trademark Office. Before the PTO could resolve the dispute, Country Mutual filed this suit in its own name and derivatively on behalf of American. The PTO suspended proceedings to await its outcome.

Country Mutual believes that American could not surrender its registration without the authorization of its shareholders or board of directors and that its president and secretary violated their fiduciary duties to the firm. Lacking complete diversity of citizenship, Country Mutual needed a federal claim to get into federal court. It chose § 38 of the Lanham Act, 15 U.S.C. § 1120, which provides:

> Any person who shall procure registration in the Patent and Trademark Office of a mark by a false or fraudulent declaration or representation, oral or in writing, or by any false means, shall be liable in a civil action by any person injured thereby for any damages sustained in consequence thereof.

Country Mutual maintains that the Federation's prosecution of the applications works a fraud on the PTO because the Federation did not reveal that American is the rightful owner, which surrendered its rights only because of the machinations of faithless officers. The district court, unmoved, dismissed the claim as unripe, explaining that

the Federation had not "procured" a registration and might never do so given the pending opposition in the PTO. Having removed the federal claim on which the state claims rested, the court dismissed the whole suit without prejudice.

Country Mutual insists that "procure" means "apply for", and to support this unusual definition it offers *Black's Law Dictionary* 1087 (5th ed.1979), which includes among the definitions: "To initiate a proceeding". The Federation "initiate[d] a proceeding", and that, according to Country Mutual, brings § 38 into play. American and the Federation return fire based on the *Oxford English Dictionary* 1418 (1933), which weighs at least 20 times more than *Black's* and is correspondingly more authoritative. The *OED* says that the meaning given in *Black's* died out after the sixteenth century. American and the Federation maintain that even if Congress is out of date, it is not three centuries behind the times. The district court used *Webster's Ninth New Collegiate Dictionary*, which weighs less than either of the others, as the neutral arbitrator and came down on the Federation's side.

Dictionaries are word museums. Like archaeologists at a dig, lexicographers mine the language through the eons for patterns of usage. Language evolves, and yesterday's meaning may disguise today's nuance. Speakers choose from a menu of meanings or nudge the language toward a new one by striking out on their own. Congress may have used "procure" to mean "obtain", or it might have pulled *Black's* from the shelf and found "initiate". Common meanings are most likely, but legislatures may use words as terms of art, and it would help to know whether Congress did so.

Section 38 tells courts to award damages to persons injured by a registration fraudulently procured in the PTO. Competing firms would be injured by the registration and use of the mark, not by the application itself. Registration does not create the right to use a mark, which comes from the association between the mark and the goods it denotes. *Hanover Star Milling*

*Co. v. Metcalf,* 240 U.S. 403, 420–21, 36 S.Ct. 357, 363, 60 L.Ed. 713 (1916). If the Federation is *using* the mark improperly and to Country Mutual's detriment, filing an application for registration adds no injury; anyway, Country Mutual may have remedy for improper use independently of § 38. Registration makes it hard for new firms to use marks that represent related goods, and an "incontestable" registration, as its name suggests, puts the mark beyond challenge on the ground that it is "descriptive". 15 U.S.C. § 1065. Unless the PTO grants the application, however, the consequences of registration (as opposed to use) do not come to pass, and no damages are "sustained in consequence thereof". Firms might incur expenses to oppose the application, but as a rule legal fees are not "damages" in American law. Section 38 makes sense when "procure" is taken to mean "obtain" and little sense when taken to mean "apply for". Powerful legislative history might counterbalance this inference, but the only interesting history shows that many bills have been introduced proposing to penalize false applications, e.g., H.R. 6248, 69th Cong., 1st Sess. § 27 (1925), H.R. 2828, 71st Cong., 2d Sess. § 26 (1929), but that none has been enacted. From the first version of § 38 in 1870, 16 Stat. 198, 212 (followed by 21 Stat. 502, 504 (1881), 33 Stat. 724, 730 (1905), and then the Lanham Act in 1946), the law has consistently forbidden procuring registration by fraud and neglected the possibility of penalizing those who seek but not get registration via fraud.

Like the doctrine of primary jurisdiction in administrative law, see *Ricci v. Chicago Mercantile Exchange,* 409 U.S. 289, 93 S.Ct. 573, 34 L.Ed.2d 525 (1973), the Lanham Act as we read it sends disputants to an agency that may resolve the problem or provide valuable information in the event litigation ensues. The PTO may refuse to register the marks, may even restore the status quo ante the transfer from American to the Federation. If it rebuffs Country Mutual's arguments the PTO may provide reasons that will avert litigation or light the way to its resolution.

Indeed, that the subject is contested before the PTO may eliminate the justification for litigation under § 38. The Federation says that it is the owner of the marks; Country Mutual disagrees. Ventilation of these positions may ensure that the PTO's decision will not be procured by fraud—which differs from advancing a position that does not persuade the tribunal. See *Metlyn Realty Corp. v. Esmark, Inc.,* 763 F.2d 826, 832–33 (7th Cir.1985). Unless Country Mutual could show that the Federation withheld some essential fact from both the PTO and Country Mutual, it could not establish fraud *on the PTO* (as opposed to fraud practiced by fiduciaries against American). So far as we can tell, all of the information Country Mutual seeks to present to the district court is before the PTO. Any error the PTO makes may be reviewed later, on the authority of § 39, 15 U.S.C. § 1121. See *Armstrong Paint & Varnish Works v. Nu–Enamel Corp.,* 305 U.S. 315, 59 S.Ct. 191, 83 L.Ed. 195 (1938).

It is also far from clear that the reference in § 38 to a "false or fraudulent declaration or representation" includes false statements about ownership of the mark, as opposed to the use of the mark in commerce in connection with certain goods. Country Mutual does not doubt that FARM BUREAU and FARM BUREAU INSURANCE are valid trademarks; Country Mutual wants to use them *as* trademarks. Little if any federal interest is at stake. Federal law defines property in trademarks, but who owns the property thus defined is a question of state law—contract or corporate. Cf. *T.B. Harms Co. v. Eliscu,* 339 F.2d 823 (2d Cir.1964) (Friendly, J.) (copyrights); *Kennedy v. Wright,* 851 F.2d 963 (7th Cir. 1988) (patents). Because we agree with the district court that the claim under § 38 is unripe, we need not pursue the subject, but it will come to the fore should the litigation resume.

AFFIRMED