**ZIP DEE, INC., Plaintiff,**

v.

**The DOMETIC CORPORATION, Defendant.**

No. 93 C 3200.

United States District Court, N.D. Illinois, Eastern Division.

May 19, 1995.

because we believe it is important, however immaterial it may be in this context.

**MEMORANDUM OPINION AND ORDER**

SHADUR, Senior District Judge.

Zip Dee, Inc. ("Zip Dee") has sued The Dometic Corporation ("Dometic") in a dual effort (1) to prevent Dometic from continuing to manufacture recreational vehicle awnings similar to Zip Dee's own and (2) to recover damages for asserted past violations of Zip Dee's rights. As the owner and holder of both a patent and a registered trademark, Zip Dee advances claims under both patent law (35 U.S.C. §§ 281, 284, 285) and trademark law (15 U.S.C. §§ 1052 et seq.).

In what was originally submitted to this Court as a proposed motion for partial summary judgment under Fed.R.Civ.P. ("Rule") 56, Dometic claims that Zip Dee's trademark claims are barred under the doctrine of claim preclusion[1] in light of prior litigation between the parties (more accurately, between Zip Dee and Dometic's predecessor in interest). This Court advised the parties that because such a motion really does not qualify as one "for a summary judgment ... as to ... any part" of Zip Dee's claims within the contemplation of Rule 56(b), Dometic's self-styled Rule 56 motion would instead be considered as a motion to narrow the issues under Rule 16. For the reasons stated in this memorandum opinion and order, Dometic's motion is denied.

*Facts*[2]

Zip Dee has been engaged in the business of manufacturing and distributing metal awnings for recreational vehicles since 1964. At first Zip Dee constructed its awnings out of a single sheet of flexible metal—a process that was patented in 1967. Since 1969, however, Zip Dee has fabricated its awnings using a

Harry M. Levy, James J. Hill, Emrich & Dithmar, Chicago, IL, for plaintiff.

William G. McGuinness, Fried, Frank, Harris, Shriver & Jacobson, New York City, Peter V. Baugher, Schopf & Weiss, Chicago, IL, for defendant.

1. This Court has always preferred to minimize potential confusion by referring to "claim preclusion" and "issue preclusion" rather than the more general label of "res judicata" (see *Curry v. Pucinski*, 864 F.Supp. 839, 845–46 (N.D.Ill. 1994), quoting *Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75, 77 n. 1, 104 S.Ct. 892, 894 n. 1, 79 L.Ed.2d 56 (1984)). It will continue to do so here.

2. Dometic initially submitted a "Statement of Undisputed Facts" in accordance with this District Court's General Rule ("GR") 12(M), but Zip Dee did not respond with a submission even remotely resembling that required by GR 12(N). Of course, both GR 12(M) and (N) apply on their face only to Rule 56 motions. Moreover, unlike Rule 56, Rule 16(c) contains no standards for viewing the factual submissions tendered by the parties in an effort to narrow the issues. Though this Court might perhaps have required that the parties conform to the GR 12(M) and 12(N) requirements to facilitate disposition of the current motion, it has not done so. Needless to say, Zip Dee will not be taken to task for its noncompliance with rules that do not literally apply in the present context.

series of metal slats that look much like individual Venetian blinds, so that the awnings could be rolled up and stored. Dometic concedes that Zip Dee's 1967 patent was broad enough to cover even Zip Dee's later multi-slatted design (D.Mem. 2–3).[3]

Before the expiration of its patent Zip Dee was the exclusive supplier of recreational vehicle awnings with slatted metal covers. In addition, Zip Dee was the only manufacturer of such awnings that would "bright dip" both the awning cover and its arms, giving the awnings a bright and shiny "mirror-like" finish. But within a year after Zip Dee's patent expired in 1983, A & E Systems, Inc. ("A & E") entered the field and began production of its own metal awnings with slatted metal covers and a mirror-like appearance.

On March 17, 1986 Zip Dee sued A & E in the United States District Court for the Central District of California, alleging in pertinent part that A & E had violated the Lanham Act, infringed Zip Dee's patent and engaged in common law unfair competition. Zip Dee's claims challenged A & E's practice of finishing its Model 9000 patio awning and its Elite window awning (collectively "prejudgment awnings") with mirror-like finishes similar to that employed by Zip Dee.

Following a jury verdict in Zip Dee's favor, the California court entered judgment for Zip Dee on its trade dress and patent claims in April 1988. That court then issued an injunction preventing A & E from further violating Zip Dee's trade dress[4] (D. Ex. 9). Dometic, which then acquired A & E in 1988, understood the injunction as forbidding only the production of awnings with a "mirror-like bright shiny finish." Consequently Dometic believed that it had complied with the terms of the injunction when it removed the offending finish from its awnings but continued to produce awnings employing the metal slatted design ("post-judgment awnings"). Zip Dee disagreed and in May 1989 commenced a contempt proceeding against Dometic in the California District Court, claiming violation of the 1988 injunction.

In the contempt proceeding Zip Dee claimed that Dometic had continued to violate the injunction by producing awnings that, while no longer bright, shiny or mirror-like, nonetheless resembled the overall form and shape of Zip Dee's awnings. However, the California court ruled in Dometic's favor, holding that "the design similarity [was] not violative of the injunction" (D. Ex. 15 at 7). That ruling was affirmed as part of the rulings contained in an unpublished order by the Court of Appeals for the Federal Circuit (*Zip Dee, Inc. v. A & E Sys., Inc.*, Nos. 90–1519 & 91–1010, 1991 WL 80084, 1991 U.S.App. LEXIS 10713 (Fed.Cir. May 17, 1991)).

While the contempt proceeding was under advisement (on August 8, 1990) Zip Dee filed an application with the United States Patent and Trademark Office ("Trademark Office") for a trademark covering the "overall configuration of a slatted cover for an awning on a recreational vehicle" (D. Ex. 17). Finding that description to be "functional" and not "inherently distinctive" (D. Ex. 18 at 1–2), the Trademark Office initially refused to issue the trademark. Zip Dee then submitted an amended application, asserting that the nonfunctionality of the awning had been addressed and resolved in Zip Dee's favor at the 1988 trial (D. Ex. 20 at 2). That led to the Trademark Office's ultimate issuance of the trademark to Zip Dee in 1992.

### *Claim Preclusion*

■ Dometic urges this Court to bar Zip Dee from claiming trademark rights in the

---

**3.** All references to the initial memoranda filed by Dometic and Zip Dee on the present motion will cite them as "D. Mem.—" and "ZD Mem.—" respectively. Dometic's reply memorandum will be cited "D.R. Mem.—." Supplemental filings by Dometic and Zip Dee will be cited "D.Supp.—" and "ZD Supp.—" respectively.

**4.** Trade dress includes (Charles McKenney & George Long III, *Federal Unfair Competition: Lanham Act § 43(a)* § 4.03, at 4–5 (1994) (emphasis omitted)):

at the very least, words, names, symbols, and devices, alone or in association with other matter, including but not limited to graphic and pictorial indicia, style, and placement of script, color, and the totality of individual components of a label, point-of-sale display or even the interior of a building which conveys, or is susceptible of conveying, a unitary, source-generated, commercial impression.

metal slatted awning design presently employed by both parties in their awnings. Dometic, preferring to concentrate on the trees rather than the forest, points out that the metal slats now at issue have the same configuration as A & E had used in manufacturing the pre-judgment awnings. From that Dometic reasons that the current action involves the same "cause of action" for claim preclusion purposes as that litigated in California. In response, Zip Dee begs the question somewhat—by referring to Dometic's post-judgment awnings as merely "new products" (ZD Mem. 6), it assumes away one aspect of the central inquiry. Nevertheless Zip Dee ultimately prevails on the claim preclusion issue in light of the applicable standards.

Because the California litigation involved a federal court judgment in a federal question case (see D. Ex. 7 at 1–2), federal law governs the claim preclusion effects of that prior judgment as applied to the case at bar (*Hudson v. Hedge*, 27 F.3d 274, 276 (7th Cir.1994)).[5] Claim preclusion prevents a party from litigating claims that either were or could have been raised in an earlier action (*Hawxhurst v. Pettibone Corp.*, 40 F.3d 175, 180 (7th Cir.1994)). Preclusion of such claims ensures the finality of judgments in order to encourage reliance on judicial decisions, to prevent vexatious litigation and to free courts to decide other disputes (*Doe v. Allied–Signal, Inc.*, 985 F.2d 908, 913 (7th Cir.1993)).

Where as here a plaintiff has *won* in the first litigation, claim preclusion (or more precisely, the doctrine of merger) applies to prevent the successful plaintiff from bringing another action on the original claim or any part thereof (Restatement (Second) of Judgments ("Restatement") § 18(1) (1982)).[6] For the doctrine to apply there must be (1) a final judgment on the merits in a prior action, (2) identity of the cause of action in the earlier and later suits and (3) identity of parties or privies in the two suits (*Hawxhurst*, 40 F.3d at 180). Because the first and third of those elements are plainly present in this case, the only disputed requirement is whether there is a sufficient identity between the present suit and the California litigation to call for application of the doctrine.

*Doe*, 985 F.2d at 913–14 (citations omitted) succinctly sets out the "same transaction test" for determining the identity of causes of action for claim preclusion purposes:

> Under the same transaction test, a cause of action consists of a "single core of operative facts" giving rise to a remedy. The inquiry, focusing on the facts of a situation, is intended to discover whether the plaintiff could have raised the issue in the first suit. "Once a transaction has caused injury, all claims arising from that transaction must be brought in one suit or lost." A plaintiff may not avoid an earlier judgment on the merits by merely concocting a new legal theory. We have rejected invitations drawing on state *res judicata* principles to narrow the breadth of claim preclusion by altering the same transaction test.

As the party seeking to invoke claim preclusion, Dometic has the burden of establishing that the cause of action in this case involves the same "core of operative facts" as the California litigation (*Foster v. Hallco Mfg. Co.*, 947 F.2d 469, 480 (Fed.Cir.1991)). Thus Dometic must show that the two causes

---

**5.** This opinion need not endeavor to discern whether the Ninth Circuit would apply "federal law" in that respect any differently from our own Court of Appeals. Federal courts seem content to apply a single "accepted formulation of res judicata for federal court use" (*Gonzalez v. Banco Cent. Corp.*, 27 F.3d 751, 755 (1st Cir.1994)). Thus while a different rule might call for application of the rendering court's claim preclusion doctrine (see 18 Charles Wright et al., *Federal Practice & Procedure: Jurisdiction* (hereafter "Wright & Miller") § 4466, at 618 (1981)), this Court is not so confined (see, e.g., *La Preferida, Inc. v. Cerveceria Modelo, S.A. de C.V.*, 914 F.2d 900 (7th Cir.1990)).

**6.** *In re Energy Co-op., Inc.*, 814 F.2d 1226, 1231 n. 5 (7th Cir.1987) explicitly adopts the Restatement approach to claim preclusion:

> The approach of the *Restatement (Second) of Judgments* has become "the present trend among courts nationwide." 1B J. Moore, J. Lucas, T. Currier, *Moore's Federal Practice* ¶ 0.410[1], at 359 (2d ed. 1984) (footnote omitted).

See also *Nevada v. United States*, 463 U.S. 110, 130–31 n. 12, 103 S.Ct. 2906, 2919 n. 12, 77 L.Ed.2d 509 (1983).

of action "are based on the same, or nearly the same, factual allegations" (*Herrmann v. Cencom Cable Assocs., Inc.,* 999 F.2d 223, 226 (7th Cir.1993)). Immaterial differences will not distinguish two causes of action for purposes of applying claim preclusion—the distinguishing facts must be outcome-determinative (*Herzog v. Kroner,* No. 90 C 3799, 1990 WL 114059, at *1, 1990 U.S.Dist. LEXIS 10033, at *2 (N.D.Ill. July 31)); *(Magnus Elecs., Inc. v. Argentine Republic,* 637 F.Supp. 487, 491 (N.D.Ill.1986), aff'd as to res judicata but rev'd in part on other grounds, 830 F.2d 1396 (7th Cir.1987)). Restatement § 24(2) sets up the hurdle that Dometic must clear:

> What factual grouping constitutes a "transaction", and what groupings constitute a "series", are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.

Zip Dee and Dometic predictably seek to draw support for their respective positions from different facets of claim preclusion doctrine. For its part, Dometic relies heavily on the proposition that a "claim" should embrace "all or any part of the transaction" at issue (Restatement § 24(1)). As Dometic views the matter, its use of the same metal slatted construction in its post-judgment awnings that it had employed in its pre-judgment awnings weighs in favor of treating all sales of metal slatted awnings as a single transaction. Zip Dee on the other hand cites *Lawlor v. National Screen Serv. Corp.,* 349 U.S. 322, 75 S.Ct. 865, 99 L.Ed. 1122 (1955) for the proposition that a lawsuit will not be held to bar even similar causes of action arising out of events occurring *after* judgment. Much of what follows in this opinion is dedicated to determining which of those sharply different perspectives should prevail.

On analysis, Dometic's line of argument cannot survive the earlier-outlined pragmatic transactional approach to claim preclusion. Dometic basically asserts that Zip Dee had an opportunity to win its first lawsuit in two ways—by asserting and establishing its rights not only in the shiny finish of A & E's infringing metal slats but also in the metal slatted awning configuration itself—so that Zip Dee should now be barred from contesting the latter aspect of Dometic's post-judgment awnings. Yet Dometic does not cite, nor could this Court find, a single case applying such a piecemeal approach to the "same transaction" analysis. Nor can the isolated authority that only colorably supports Dometic's position shoulder such a burden (see David Currie, *Res Judicata: The Neglected Defense* ("Currie"), 45 U.Chi.L.Rev. 317, 340 (1978); 18 Wright & Miller § 4409, at 78–79).[7]

There is of course no dispute (and Dometic concedes) that its post-judgment awnings are different in a material respect from those at issue in California—the mirror-like finish applied to Dometic's pre-judgment awnings was clearly outcome-determinative in the California litigation, and that finish is now different. In that respect one need look no further than the California court's refusal to hold Dometic in contempt for producing its post-judgment awnings with a satin finish (D. Ex. 15). Hence the awning sales now at issue constitute distinct transactions, and Zip Dee is entitled to assert infringement anew.

Indeed, even to the extent that Dometic's new awnings are similar to those at issue in the California action, *Lawlor,* 349 U.S. at 327–28, 75 S.Ct. at 868–69 (footnotes omitted) confirms that a continuing course of such conduct by a defendant may create a separate cause of action:

> That both suits involved "essentially the same course of wrongful conduct" is not decisive. Such a course of conduct—for example, an abatable nuisance—may frequently give rise to more than a single cause of action. And so it is here. The conduct presently complained of was all subsequent to the 1943 judgment. In addition, there are new antitrust violations

---

**7.** Consideration of the alternative argument to the effect that Zip Dee should be barred by *issue* preclusion from relitigating the broad issue of "trademark validity" for its awnings is deferred for the moment.

alleged here—deliberately slow deliveries and tie-in sales, among others—not present in the former action. While the 1943 judgment precludes recovery on claims arising prior to its entry, it cannot be given the effect of extinguishing claims which did not even then exist and which could not possibly have been sued upon in the previous case.[8]

See also *Greenberg v. Board of Governors of Fed. Reserve Sys.*, 968 F.2d 164, 168 (2d Cir.1992); *Green v. Illinois Dep't of Transp.*, 609 F.Supp. 1021, 1024 (N.D.Ill.1985); Currie, 45 U.Chi.L.Rev. at 339–40 (collecting authorities).

 Our Court of Appeals has added its own gloss to *Lawlor*.[9] First, a plaintiff is barred from attempting to recover in a second action damages that had accrued *before* the first judgment, even where the plaintiff will not actually suffer those damages until *after* that judgment (*Ohio–Sealy Mattress Mfg. Co. v. Sealy, Inc.*, 669 F.2d 490, 494 (7th Cir.1982), citing *Lawlor* and *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 339, 91 S.Ct. 795, 806, 28 L.Ed.2d 77 (1971)). That doctrine does not, however, affect the plaintiff's entitlement to bring a second suit for damages caused by conduct occurring *after* the first judgment (*Ohio–Sealy Mattress*, 669 F.2d at 494; see *Car Carriers, Inc. v. Ford Motor Co.*, 789 F.2d 589, 596 (7th Cir.1986)). Second, a plaintiff will not be required to estimate its future damages or to predict whether a defendant will continue to commit the acts for which the defendant was held liable in the first suit

(*Singer Co. v. Skil Corp.*, 803 F.2d 336, 342–43 (7th Cir.1986)). And finally, "new evidence of injury differs from a new wrong" (*Supporters to Oppose Pollution v. Heritage Group*, 973 F.2d 1320, 1326 (7th Cir.1992))—for that purpose *Lawlor* involved *new* conduct (*id.*).[10]

Applied to the present case, *Lawlor* and its progeny provide another justification for deciding that claim preclusion should not prevent Zip Dee from asserting its trademark claims. Even conceding that—as matters later turned out—Dometic produced post-judgment awnings similar in an important respect to its pre-judgment awnings, Zip Dee cannot be penalized for having failed to divine, when it brought the California litigation, the course of future conduct of A & E (or, a fortiori, of its successor in interest Dometic): (1) whether to leave that field of competitive activity entirely or (2) if the awning business were in fact to be continued, (a) whether to change from the metal slatted design as well as from the shiny finish or (b) whether to adopt a metal slatted design that, when combined with the other new features of Dometic's retooled awning, might not continue to infringe upon Zip Dee's rights. Nor is this, like *Ohio–Sealy Mattress*, a case where Zip Dee claims to be incurring continued harm from Dometic's pre-judgment sale of its awnings—rather all of the infringement claims in Zip Dee's Twice Amended Complaint arose well after the California judgment. And putting equitable concerns aside for the moment (more on that subject later), Zip Dee could

---

8. [Footnote by this Court] Although *Lawlor* pointed in part to "the public interest in vigilant enforcement of the antitrust laws" (*id.* at 329, 75 S.Ct. at 869), Congress has also determined that "a sound public policy requires that trademarks should receive nationally the greatest protection that can be given them" (*Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189, 193, 105 S.Ct. 658, 661, 83 L.Ed.2d 582 (1985)).

9. Dometic repeatedly contends (D.R.Mem. 11 and Dometic's April 3, 1995 letter to this Court) that the Seventh Circuit has read *Lawlor* narrowly as involving conduct of a different nature from that involved in the prior litigation. But the case that Dometic cites for that proposition, *"Young Eng'rs, Inc. v. United States Int'l Trade Comm'n*, 721 F.2d 1305, 1316 ( [Fed.Cir.] 1983)" was decided not by the Seventh Circuit but rather the

Federal Circuit, so it is not controlling. In any event, the interpretation urged by Dometic runs counter to the finding by most courts that the "different nature" of the defendant's later conduct was cited merely as cumulative support for *Lawlor*'s holding (see, e.g., *United States v. General Electric Co.*, 358 F.Supp. 731, 740 (S.D.N.Y. 1973) (collecting cases)).

10. All of the cases cited in this paragraph of the text also address another question this Court had posed to counsel in the claim preclusion context: whether the relevant "core of operative facts" refers to the plaintiff's facts (Zip Dee's unchanged design) or to the defendant's facts (Dometic's post-judgment altered awnings). They clearly teach that the defendant's course of conduct drives the present inquiry (see also *Doe*, 985 F.2d at 914).

scarcely have sought legal recourse in the first lawsuit against an awning design (where that term is understood to encompass a product in its entirety) that did not yet exist.

This Court is of course aware of the trend toward some expansion of the definition of "claim" in the claim preclusion context (see *Blonder–Tongue Labs., Inc. v. University of Ill. Found.*, 402 U.S. 313, 327, 91 S.Ct. 1434, 1442, 28 L.Ed.2d 788 (1971)). But that does not override the considerations set out here in favor of allowing Zip Dee its day in court.[11] As already stated, there are material differences between the transactions in the California litigation and here—but even were there no such differences, post-judgment sales involving "exactly the same type" of product would still constitute separate "causes of action" (*Vanderveer v. Erie Malleable Iron Co.*, 238 F.2d 510, 512–14 (3d Cir. 1956)).[12]

Dometic complains that if this Court allows Zip Dee to avoid claim preclusion to bar its current trademark claims, this Court will be condemning trademark litigants to repetitious suits without repose (D.R. Mem. 12–13 (footnote omitted)):

> Claim preclusion with respect to a continuing course of the same conduct is particularly important in actions based on trademarks and other kinds of intellectual property. Trademarks are meant to be used again and again, and actions for infringement rarely, if ever, involve a single, unrepeated sale.... If claim preclusion does not apply to a continuing course of conduct, actions for trademark infringement

would have virtually no prospective effect, and actions for declaratory judgment would be pointless.

There are two responses to Dometic's concerns.

First, while claim preclusion is indeed "particularly important" in the trademark context, it is precisely *because* it is so important that the doctrine is to be applied only with caution (4 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* ("McCarthy") § 32.27 (3d ed. 1994 rev'n)). In that regard the principal concern is that the commercial interest being protected may change over time—not necessarily in the physical sense, but rather in the meaning or value placed upon that interest by the public perception (*id.*). On that score Zip Dee's rights in its metal slatted design may have changed over the course of the last decade even while the design stayed constant—in fact it is precisely *because* Zip Dee's design stayed constant in that important respect that Zip Dee may now enjoy rights that it could not prove earlier. Speculation aside, Dometic's claim that Zip Dee should be barred because it *could* have brought suit challenging the metal slatted design as such in the California litigation attempts to freeze the fluid medium of public perception—thus even the narrower doctrine of issue preclusion would not bar Zip Dee, had it indeed pursued its claim on the design and *lost*, from now asserting that its design had acquired secondary meaning during the period following the first litigation (*id.* at 32–108). Claim preclusion favors repose, not somnolence.[13]

---

**11.** *In re Dual–Deck Video Cassette Recorder Litig.*, 11 F.3d 1460, 1463–64 (9th Cir.1993) suggests nothing to the contrary. Dometic again mischaracterizes matters when it cites that case in support of its claim preclusion argument (D.R.Mem. at 10)—for *Dual–Deck* explicitly deals with *issue* preclusion.

**12.** Although Dometic cites *Vanderveer* in support of its claim preclusion argument (notably on the same pages where it accuses Zip Dee of "[t]horoughly misconstruing the law of claim preclusion"), (D.R.Mem. 8–9), that case was clearly decided on *issue* preclusion grounds. Its determination that temporal distinctions should not hamper the application of issue preclusion in no way affects the analysis of whether such distinctions should be afforded in the claim preclusion

context. It is instead *Vanderveer*'s explicit assumption that it was confronted with *different* causes of action despite the similar products at issue that informs the present inquiry. More to the point in the context of claim preclusion, at least one court has gone so far as to hold that such preclusion will not apply even where the products involved in the first and second suits are identical (see *Juno Lighting, Inc. v. Ruud Lighting, Inc.*, No. 94 C 4763, 1995 WL 12254, at *3, 1995 U.S.Dist. LEXIS 197, at *8–*10 (N.D.Ill. Jan. 11, 1995)).

**13.** Because this opinion has held that claim preclusion does not apply to prevent Zip Dee from bringing its trademark infringement claims, the question whether its trademark *registration* (which has taken place since the California litiga-

Second, the mere fact that claim preclusion does not bar Zip Dee's suit because Dometic has engaged in conduct giving rise to a new cause of action does *not* entitle Zip Dee to relitigate at will issues that have been decided in previous suits. After all, one reason for the evolution of the doctrine of *issue* preclusion was to forestall such redundant actions (see Restatement § 28 cmt. b, illus. 1). This opinion now turns to that related doctrine.

### Issue Preclusion

■ Because neither party's memoranda had addressed the question of what role (if any) issue preclusion might play in the present context, this Court asked the litigants to submit supplemental memoranda discussing the scope of the "issues" decided by the California court. Even though the "bald question of whether a thing is an issue almost never arises" (1B James Moore et al., *Moore's Federal Practice* ¶ 0.443[2], at 564 (2d ed. 1994)), the possible impact of that determination can loom large as it does here (see *Starker v. United States*, 602 F.2d 1341, 1344–45 (9th Cir.1979)). Construed narrowly, the "issue" resolved by the California jury embraces only the specific facts submitted by the parties in that action, while a very broad definition might encompass the validity of Zip Dee's trade dress in general and bar relitigation of that issue here. But because the parties concur that only the narrower definition should apply here, what follows is

devoted mainly to determining the reach of the California judgment.

Issue preclusion, a term synonymous with the older label of "collateral estoppel," refers to the binding effect of a judgment that forecloses litigation of an issue that has actually been litigated and decided in an earlier action. That serves the "dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation" (*Meyer v. Rigdon*, 36 F.3d 1375, 1379 (7th Cir.1994), quoting *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326, 99 S.Ct. 645, 649, 58 L.Ed.2d 552 (1979)).

■ Two basic distinctions between claim and issue preclusion—in a sense obverse sides of the preclusion coin—deserve mention at the outset. First, issue preclusion applies even where (as here) the second suit between the same parties involves a *different* cause of action (*United States v. Bailey*, 957 F.2d 439, 443 (7th Cir.1992)). Second, issue preclusion will not prevent parties from asserting arguments not raised during the prior litigation, even if they could have been advanced earlier (*Commissioner v. Sunnen*, 333 U.S. 591, 598, 68 S.Ct. 715, 719, 92 L.Ed. 898 (1948)):

> Since the cause of action involved in the second proceeding is not swallowed by the judgment in the prior suit, the parties are free to litigate points which were not at issue in the first proceeding, even though

tion) would have allowed Zip Dee to escape an otherwise adverse ruling on that score is obviously moot. It is however worth observing that such a proposition seems dubious at best, despite the opinion of one of this Court's colleagues in *Juno Lighting*, 1995 WL 12254, at *3–*4, 1995 U.S.Dist. LEXIS 197, at *10–*11. While the Lanham Act undoubtedly conferred "new protections" (*Park 'N Fly*, 469 U.S. at 193, 105 S.Ct. at 661; see also *Qualitex Co. v. Jacobson Prods. Co.*, — U.S. —, —, 115 S.Ct. 1300, 1307, 131 L.Ed.2d 248 (1995)) and substantial substantive rights (see 92 Cong. Rec. 7524 (1946) (statement of Rep. Lanham); 4A Rudolf Callmann, *The Law of Unfair Competition, Trademarks and Monopolies* ("Callmann") § 25.03, at 25–18 (4th ed. 1983 & supp. 1994)) on the holders of registered marks, the basic right to a trademark does not depend upon the Lanham Act or any other statute, but flows instead from prior appropriation and use (*Country Mutual Ins. Co. v. American*

*Farm Bureau Fed'n*, 876 F.2d 599, 600–01 (7th Cir.1989); 4A Callmann § 25.03, at 18). Thus a party may continue to enforce a trademark even after its registration has been cancelled (*Santana Prods., Inc. v. Compression Polymers, Inc.*, 8 F.3d 152, 155 (3rd Cir.1993); *Gilbert/Robinson, Inc. v. Carrie Beverage–Missouri, Inc.*, 989 F.2d 985, 991 (8th Cir.1993)), and conversely the registration of a trademark will not significantly affect the course of a pending infringement action asserted under a common law theory of recovery (*Goya Foods, Inc. v. Tropicana Prods., Inc.*, 846 F.2d 848, 854 (2nd Cir.1988)). Zip Dee always had the essential right to sue for infringement of its mark before registration—mere differences in the "jurisdictional allegations and the form of relief sought" do not trigger new "claims" under claim preclusion principles (*Harper Plastics, Inc. v. Amoco Chems. Corp.*, 657 F.2d 939, 945 (7th Cir.1981)).

such points might have been tendered and decided at that time.

See also *Cromwell v. County of Sac*, 94 U.S. 351, 356–57, 24 L.Ed. 195 (1877).

■■■ Several similarities between claim and issue preclusion also merit preliminary mention. Like claim preclusion, issue preclusion is an affirmative defense, so that the burden of establishing its application to the case at bar lies with Dometic (*Freeman United Coal Mining Co. v. Office of Workers' Compensation Program*, 20 F.3d 289, 294 (7th Cir.1994)). And as with claim preclusion, federal principles of issue preclusion apply where as here the earlier litigation took place in federal court (*Teamsters Local 282 Pension Trust Fund v. Angelos*, 762 F.2d 522, 525 (7th Cir.1985)). Finally, once a set of facts has been fully and fairly litigated between private parties, those facts may not be revisited even if the second case involves a distinct legal issue (*Falconer v. Meehan*, 804 F.2d 72, 76 (7th Cir.1986); *Teamsters Local 282*, 762 F.2d at 525).

Dometic must establish four elements to bring issue preclusion into play (*Kraushaar v. Flanigan*, 45 F.3d 1040, 1050 (7th Cir. 1995)):

(1) the party against whom the doctrine is asserted was a party to the earlier proceeding; (2) the issue was actually litigated and decided on the merits; (3) the resolution of the particular issue was necessary to the result; and (4) the issues are identical.

See also *La Preferida*, 914 F.2d at 906. In this instance the only element *not* in dispute is the first, for Zip Dee was of course a party in the California litigation.

When this Court first broached the question whether issue preclusion as well as claim preclusion should be examined on the current motion, it alerted the parties to the possibility that the breadth of the "issues" decided by the California court might have a profound effect on the application of issue preclusion here.[14] But Dometic—the party with the most to gain from an expansive notion of issue preclusion—has chosen to concede that the "issue" concept should be viewed narrowly (D.Supp. Mem. 5 n. 4):

[W]here some aspect of patent or trademark "validity" is addressed in an antecedent litigation, the "issue," for preclusion purposes, is not the broad concept of invalidity.... The particular basis for challenging validity which was actually litigated and "directly determined" will control the scope of the issues that are subject to preclusion.

This court therefore turns to the topic on which the parties clash: the identification of the issues actually litigated and decided in the California litigation.

For that purpose this Court may look beyond the earlier judgment and examine the pleadings and evidence in the California action (*La Preferida*, 914 F.2d at 907). If the jury in the California court did not make express findings on issues that were raised by the pleadings or evidence and were necessary to support the judgment, it may be inferred that those issues were determined consistently with the judgment (*id.*).

So much for background—it is time to examine the contentions of the parties. In that respect it takes only a brief look at the parties' respective positions then and now to show how each of them meets itself coming and going.

As for Dometic, a simple comparison of two section headings in its earlier and current memoranda provides a graphic demonstration of its extraordinarily distressing inconsistency. Thus a section of Dometic's supplemental memorandum submitted on the present motion carries this heading (D.Supp. Mem. 6):

ZIP DEE LITIGATED AND LOST THE ISSUE OF WHETHER THE SLATS WERE PART OF ITS DISTINCTIVE APPEARANCE

April 12, 1995 opinion (1995 WL 238658, at *1–*2, 1995 U.S.Dist. LEXIS 5223, at *2–*3) observed that patent cases might not control this trademark dispute. Because the parties have chosen not to engage that issue, it may be left for another day.

---

**14.** At the same time this court also observed that such considerations might be relevant in the claim preclusion context. Though patent infringement cases suggest a narrow interpretation of "claim" (see *Foster*, 947 F.2d at 479–80; *Young Eng'rs*, 721 F.2d at 1316), this Court's

That representation is totally at odds with this caption in the Memorandum in Support of Its Motion To Vacate or Modify Injunction that Dometic's present counsel had submitted to the California court in the earlier litigation (ZD Supp. Ex. N at 6):

> The Only Trade Dress Rights Zip Dee Attempted To Establish At Trial Were In The Mirror–Like Bright, Shiny Finish [15]

For its part, Zip Dee contends here (accurately in terms of the California judge's ruling in the contempt proceeding) that in the California litigation it established its rights only in the bright shiny finish of its awnings (ZD Supp.Mem. 8–9). Yet when Zip Dee had later represented the scope of that litigation to the Trademark Office in support of its trademark application covering the slatted design, it indicated that the jury had included that design within Zip Dee's trade dress rights (D. Ex. 20 at 2):

> The issue of functionality of the awning was addressed at trial and the jury found that the Zip Dee awning was not functional.... [O]ther evidence that the slatted design is nonfunctional is that A & E had access to another design for a metal cover for an awning [that] ... provided all the functional advantages of the slatted cover....

Despite such best efforts (by both parties) to muddy the waters in terms of what was actually litigated in California and decided by the jury there, after reviewing the record this Court is comfortable in holding that the now-critical issue was *not* decided there. Even the most expansive reading of the California court transcripts indicates only that Zip Dee may then have claimed trade dress rights in the slatted metal design *in conjunction with* the bright and shiny finish of its awnings. Nowhere in the record of that litigation does Zip Dee assert rights in the slatted design *alone*. That is made crystal clear by the following exchange during the jury instruction conference (ZD Supp. Ex. F. at 55):

> MR. ROSTON: [16] No, your Honor. What's going to happen, if I may, is then they are going to assert to the jury that they have the right to the slatted metal cover, bright-dipped or not. That's the problem.
>
> MR. HILL: It's so totally off the wall, I'm going to interrupt him. We are not going to assert that to the jury.
>
> THE COURT: Well, if that is asserted, then I will interrupt.
>
> MR. HILL: You're invited to, and if that's asserted, my client can take me off the case.

Zip Dee was indeed exceedingly careful not to concede away its ability to argue that the slatted construction retained non-functional attributes, the benefit of which should accrue to Zip Dee even after its patent expired. Here is a later portion of the jury instruction conference (ZD Supp. Ex. F at 56–57):

> THE COURT: The word "slatted" just becomes such an important word here, and for me to incorporate it in an instruction I think may cast it improperly. I have just written in here, and I'm willing to listen to your yelps after I read the language; but let me finish: "A & E thereafter had a right to manufacture an awning with a metal cover of any design or configuration." Now—
>
> MR. SCHWARTZ: That's okay.
>
> MR. HILL: That's fine.
>
> MR. SCHWARTZ: I have no problems with that.
>
> THE COURT: I don't know why that—
>
> MR. ROSTON: Your Honor, would it be all right to say "any design, construction, or configuration"?

---

**15.** [Footnote by this Court] As might be expected, those contrasting headings mirror a like inconsistency in the texts of Dometic's filings in the two lawsuits—filings by the same lawyers. What has just been described recalls to mind this Court's careful choice of the word "disingenuous" two months ago in describing an earlier argument by Dometic (see 1995 WL 124255, at *1, 1995 U.S.Dist. LEXIS 3461, at *2). But as the next portion of the text sets out, this time Dometic is not alone in its attempt to rewrite litigation history to suit its purposes.

**16.** [Footnote by this Court] Messrs. Roston and Schwartz represented A & E in the California litigation, while Mr. Hill represented Zip Dee (as he does here).

THE COURT: I have no problem with that.

MR. ROSTON: I would prefer that.

MR. HILL: We object to it, your Honor, because we could have obtained Lanham Act rights in the design.

THE COURT: Yes, but you didn't.

MR. HILL: Well, now, we—

THE COURT: Now, wait, you said you could have.

MR. HILL: No, your Honor. That's the ultimate issue.

THE COURT: Yes, excuse me.

Most importantly, throughout the trial and closing arguments Zip Dee consistently claimed rights in the metal slatted cover only in connection with the awnings' bright and shiny finish. That marriage of elements is

17. Zip Dee asserted in that brief (D. Ex. 1 at 5–6 & 9–10 (emphasis in original)):

> The awning was characterized as having a slatted metal cover (that is, long sections called "slats" were joined to wrap around the awning when stored against the vehicle during travel or non-use) and the slats and support arms are "bright dipped" or made of stainless steel to make them appear highly polished and shiny, like chrome.
>
> \* \* \* \* \* \*
>
> Because Zip Dee was the only awning manufacturer with bright dipped metal covers and arms and was the only manufacturer with a slatted metal case, the Zip Dee awning was visually unique and *inherently distinctive.* Even if the jury does not find Zip Dee's awning to be inherently distinctive, it is still entitled to protection. The hinged metal slats and the bright dipped metal created a unique trade dress which, through over twelve years of exclusive use, has acquired distinctiveness and has come, in fact, to identify Zip Dee as the source throughout the industry.

18. There Zip Dee's lawyer said (D.Supp. Ex. 33 at 7–8):

> So that is what we are talking about when we are talking about trade dress. And the distinctive trade dress of the awning we have here, the testimony will show, two critical features, the bright shiny mirrorlike finish, particularly on the long metal cover, and the structure of the cover itself, which we call slatted metal.

19. On direct examination she testified (D.Supp. Ex. 33 at 41):

> Q. Would you describe, even if you are repeating yourself, what features of the awning made it distinctive so that customers could so recognize it?

clear from Zip Dee's pretrial brief,[17] its opening statement,[18] the testimony of Zip Dee President Judith Miller on direct examination[19] and on cross-examination,[20] the survey submitted by Zip Dee's expert[21] and Zip Dee's closing argument, when its counsel said that A & E was claiming "a right to make a shiny metal cover, shiny metal hardware, shiny metal slatted cover" (ZD Supp. Ex. N at 10). Finally, the California court confirmed the connection when issuing its injunction (D. Ex. 9)[22]:

> The trade dress can generally be defined as the overall appearance created by the mirror-like bright shiny finish on the cover and support arms and the exterior aspects of the slatted or roll-up metal cover and support arms, considered in their entireties.[23]
>
> A. The slatted metal cover, the shiny hardware and the use of a woven fabric.

20. On cross-examination she testified (ZD Supp. Ex. N at 5–6 n. 3):

> Q: Mrs. Miller, let me read to you a definition of trade dress that was provided by your counsel and see if you endorse it.
>
> It says: The trade dress of plaintiff's awning is the overall appearance created by the mirror-like, bright shiny finish on the cover and support arms and the exterior aspects of the slatted or rolled up metal cover and support arms considered in their entireties.
>
> Do you endorse that?
>
> \* \* \* \* \* \*
>
> A: I have difficulty understanding the language sometimes, sir, but it sounds right to me.

21. Here is what the survey concluded (D.Supp. Ex. 34 at 9):

> Secondary meaning has attached to the cover and "bright dipped" shiny hardware featured on the Zip Dee awning.

22. In the injunction order the California court observed that it had considered "along with the Jury the evidence and arguments of counsel" (*id.*).

23. [Footnote by this Court] In later ruling that Dometic did not violate the injunction by producing satin-finish awnings with a metal slatted construction, the California judge recharacterized Zip Dee's trade dress (D. Ex. 15 at 6 (emphasis in original, footnote omitted)):

> [I]n this case the trade dress was specifically limited in the injunction to the finish on the

Zip Dee's decision in the earlier litigation to assert a right in the metal slatted configuration of its awning only in conjunction with the awning's bright and shiny finish is hardly surprising—trade dress has traditionally focused on the "entire selling image, rather than the narrower single facet of trademark" (*Vision Sports, Inc. v. Melville Corp.*, 888 F.2d 609, 613 (9th Cir.1989)). Nor is it surprising that litigation painted by lawyers with such a broad brush might leave unresolved some narrower issues that might be in dispute in a subsequent cause of action (*Bristol–Myers Squibb Co. v. McNeil–P.P.C., Inc.*, 973 F.2d 1033, 1042 (2d Cir.1992) (emphasis in original)):

> In examining trade dress the focus is on the *entire* look of the product or packaging. Individual aspects of a trade dress may be eligible for trademark protection in their own right, but in an action for trade dress infringement each aspect should be viewed in relation to the entire trade dress.

It will be remembered that issue preclusion requires that the issue in question have been both litigated *and* decided in the earlier lawsuit (*Truck Ins. Exch. v. Ashland Oil, Inc.*, 951 F.2d 787, 792 (7th Cir.1992)). To this point the focus has been on the first of those requirements, but it is also plain that the issue under consideration—Zip Dee's rights in the slatted metal awning construction alone—was never *decided* in the California litigation. There the jury was handed a special verdict form on which it was to determine whether Zip Dee had established secondary meaning "in its trade dress"[24]—nothing more. Its answer to that inquiry cannot reasonably be stretched to bar litigation of the narrower claims now at issue on preclusion grounds.[25]

What has been said to this point is sufficient to dispatch the alternative possibility that issue preclusion might foreclose Zip Dee's current trademark-based claim. But several additional facets of issue preclusion doctrine also buttress that conclusion. For the sake of completeness, each of those considerations is visited briefly.

First, as the California special verdict form demonstrates, Zip Dee there *won* every element of its then-asserted unfair competition claim for trade dress infringement. Thus even if Zip Dee had argued and lost (as it did not) on the sub-issue of whether it had a protectable interest in the metal slatted design alone, that decision could not be given issue preclusive effect to bind Zip Dee here because Zip Dee could not have appealed its California victory (*White v. Elrod*, 816 F.2d 1172, 1174 (7th Cir.1987); see also 18 Wright & Miller § 4421, at 200–01).

Second, only matters necessary to a judgment may bind parties under issue preclusion principles (*Kraushaar*, 45 F.3d at 1050). Even if Zip Dee had litigated and lost (as it did not) on the sub-issue of the metal slatted configuration alone, it would be a

metal hardware. In this contempt action, Zip Dee can *only* recover for violations of its trade dress or a colorable imitation thereof, which was specifically defined as the overall effect created by the "bright shiny mirror-like finish." To limit Zip Dee's recovery to this is not to "dissect" the trade dress, rather, this is all there is to Zip Dee's trade dress.

Dometic attempts to convert that language into a statement supporting its argument that Zip Dee had attempted to argue rights in the slatted design alone and lost. But any such reading would be a distortion of the case put before the jury—what has gone before demonstrates otherwise.

24. At this Court's direction, on May 9, 1995 one of its law clerks requested of both parties, in a telephonic conference call, a copy of that special verdict form. Zip Dee's counsel agreed to provide that form and did so the next day. Special verdicts are particularly useful where as here it is foreseen that the parties involved in initial litiga-

tion might quarrel over similar issues in the future (see *In re Rhone–Poulenc Rorer, Inc.*, 51 F.3d 1293, 1296–97 (7th Cir.1995)).

25. Dometic's present contention is particularly ironic in light of its actually having held out the prospect of Zip Dee's present action in an effort to get the California court to vacate or modify the injunction there. Here is what it said in its brief filed for that purpose (ZD Supp. Ex. N at 14 (emphasis in original)):

> Zip Dee's argument overlooked the fact that while Zip Dee could in *future litigations* attempt to establish a more expansive definition of trade dress than the chrome-like finish established at trial—*in this litigation* it was bound by what had already been litigated, *i.e.*, the mirror-like bright, shiny finish its experts and witnesses testified made Zip Dee's awning distinctive.

contradiction in terms to label such a determination as necessary or essential to the judgment *in favor of* Zip Dee.

Third, Zip Dee would have faced a heavier burden of persuasion in the California action than it does here in terms of establishing trademark rights in its metal slatted design. *Freeman United,* 20 F.3d at 294 teaches:

> Collateral estoppel should not apply where the party against whom preclusion is sought faced a heavier burden of persuasion in the first action compared with the second. *See* Restatement (Second) of Judgments § 28(4) (1982). This same principle also applies where the allocation of the burden is different in the two actions. *See id.; see also* 18 Wright, Miller & Cooper, *supra* § 4422 at 212 ("Shifts in allocation of the burden of persuasion generally should follow the same principle as changes in the decree [sic] of persuasion.").

When the California litigation was brought, trade dress infringement plaintiffs in the Ninth Circuit were required to establish secondary meaning in their trade dress regardless of how inherently distinctive it was (*First Brands Corp. v. Fred Meyer, Inc.,* 809 F.2d 1378, 1381 (9th Cir.1987)). That extra step has not been required in the Seventh Circuit since *Blau Plumbing, Inc. v. S.O.S. Fix–It, Inc.,* 781 F.2d 604, 608–09 (7th Cir. 1986) and is no longer required in any such action in light of *Two Pesos, Inc. v. Taco Cabana, Inc.,* —— U.S. ——, 112 S.Ct. 2753, 120 L.Ed.2d 615 (1992). Issue preclusion as to Zip Dee's trademark claims would therefore be inappropriate in any event.

This discussion of issue preclusion might well end here if it were not for some muddying of the waters ascribable to the California trial judge (although, importantly, he acted in that regard at Dometic's behest)—a development that occurred after the underlying lawsuit had produced its jury verdict and the related injunction order. Because of that

later development, some further analysis is appropriate.

It will be recalled that the California judge had characterized Zip Dee's trade dress in the following fashion in the injunction order that was entered immediately after the jury verdict (D. Ex. 9):

> The trade dress can generally be defined as the overall appearance created by the mirror-like bright shiny finish on the cover and support arms and the exterior aspects of the slatted or roll-up metal cover and support arms, considered in their entireties;

That description accurately mirrored[26] everything that had taken place during the trial, as has been painstakingly reviewed in this opinion.

But then in the course of ruling on Zip Dee's later motion seeking to hold Dometic in contempt of that injunction order, the trial judge inexplicably narrowed that earlier (and accurate) definition of Zip Dee's trade dress (ZD Supp. Ex. O at 6 (emphasis in original)):

> In this contempt action, Zip Dee can *only* recover for violations of its trade dress or a colorable imitation thereof, which was specifically defined as the overall effect created by the "bright shiny mirror-like finish." To limit Zip Dee's recovery to this is not to "dissect" the trade dress, rather, this is all there is to Zip Dee's trade dress.

Dometic now seeks to rely on that recharacterization of the jury verdict to assert that Zip Dee litigated its rights in the metal slatted design and lost.[27]

Is any different conclusion as to issue preclusion called for by that shift from what had gone before? Dometic claims that Zip Dee should indeed be bound here by inferences that Dometic seeks to draw from the judge's last-quoted description of the effect of the earlier trial. Three different paths lead this Court to the identical destination: Dometic is wrong.

---

**26.** Bad pun intended.

**27.** Interestingly enough, each version of the scope of Zip Dee's established trade dress can be viewed as having been upheld on appeal—the jury verdict in its favor was affirmed in an unpublished opinion (15 U.S.P.Q.2d 1154, 1989 WL

133602 (Fed.Cir.1989)), and as said earlier in this opinion Zip Dee's appeal from the contempt ruling was rejected in another unpublished opinion (1991 WL 80084, 1991 U.S.App. LEXIS 10713 (Fed.Cir. May 17, 1991)).

As an initial matter, the same issue preclusion principles that have been set out earlier in this opinion apply with full force in the context of the contempt ruling. Most importantly in that respect, it is worth repeating that before *any* aspect of a prior case can bar later litigation on a particular issue, that issue must have been litigated *and* decided (*Truck Ins. Exch.*, 951 F.2d at 792). Dometic would have it that because Zip Dee argued post-trial that the scope of the injunction extended to the metal slatted configuration itself, Zip Dee *litigated* the "scope of the injunction" issue and lost when the California judge *decided* that Zip Dee's trade dress incorporated only the bright shiny mirror-like finish. But that level of abstraction fails on examination, for it glosses over the critical fact that the *jury* had already decided the scope of Zip Dee's trade dress on the basis of what was litigated in court. And *that* determination forecloses the writing of any subsequent revisionist history by the judge.

*Ohio–Sealy Mattress Mfg. Co. v. Sealy, Inc.*, 585 F.2d 821, 844 (7th Cir.1978)—addressing "the implications of a jury's verdict for a district court's subsequent ruling on equitable relief" (the identical situation as in the California litigation)—teaches as much even where the jury has entered a *general* verdict:

> Any actual issues necessarily and actually decided by the jury are foreclosed under settled principles of collateral estoppel from subsequent reconsideration by the district court. The court may not make findings "contrary to or inconsistent with the jury's resolution ... of that same issue as implicitly reflected in its general verdict...."

Hence the definition of Zip Dee's trade dress advanced at trial, accepted by the jury and restated promptly and accurately by the California judge in the injunction order controls.

■ Zip Dee also rightly suggests a second independent ground for rejecting Dometic's argument: judicial estoppel (ZD Supp. Mem. 13–14). Judicial estoppel "forbid[s] a person who has won a judgment on one ground to repudiate that ground in a subsequent litigation in an effort to obtain a second judgment" (*Patz v. St. Paul Fire &*

*Marine Ins. Co.*, 15 F.3d 699, 702 (7th Cir. 1994); accord, *Chaveriat v. Williams Pipe Line Co.*, 11 F.3d 1420, 1427 (7th Cir.1993)). As *Astor Chauffeured Limousine Co. v. Runnfeldt Inv. Corp.*, 910 F.2d 1540, 1548 (7th Cir.1990) (emphasis in original) teaches as to the taking of inconsistent positions in two suits (as Dometic has done here):

> The disposition of Suit # 1 may have established one or more facts, and although issue preclusion (collateral estoppel) formally applies only to a fact established adversely to the party, the principle that the resolution in the first suit should be respected has more general application. Inconsistent positions in sequential suits not only multiply the number of decisions, undermining the principles of finality, but also facilitate double recovery. Why should one be entitled to win the first suit by demonstrating A and the second suit by establishing *not*-A? One of these must be wrong; indeed, inconsistency probably demonstrates a violation of Fed.R.Civ.P. 11.

Accord, *Chrysler Motors Corp. v. International Union, Allied Indus. Workers of Am.*, 2 F.3d 760, 764 (7th Cir.1993).

■ Dometic's volte-face is precisely the kind of conduct that is foreclosed by judicial estoppel. As pointed out earlier, Dometic clearly took the position in its 35–page brief submitted to the California court—by the selfsame counsel who represent Dometic here—that it should not be held in contempt because Zip Dee had litigated *only* the bright shiny finish (ZD Supp. Ex. N at 14) (emphasis in original):

> Zip Dee's argument overlooked the fact that while Zip Dee could in *future litigations* attempt to establish a more expansive definition of trade dress than the chrome-like finish established at trial—*in this litigation* it was bound by what had already been litigated, *i.e.*, the mirror-like bright, shiny finish its experts and witnesses testified made Zip Dee's awning distinctive.

And that position ultimately carried the

day[28]—for confirmation on that score we need look only at the California judge's already-quoted language. Dometic is therefore estopped from claiming that "Zip Dee lost on the issue of whether the metal slats were part of Zip Dee's distinctive appearance" (D.Supp.Mem. 10)—that argument is foreclosed by its own earlier inconsistent (and successful) position to the contrary.[29]

Finally, Dometic encounters the same hurdle in this somewhat different context that it encountered vis-a-vis the jury trial—Zip Dee's burden of persuasion has changed in a material respect over the past decade. So even if this Court were required to adopt Dometic's position as to the California court's contempt ruling (as it is not), and even if Dometic were able to escape the doctrine of judicial estoppel (as it is not), the fact remains that Zip Dee need not now establish secondary meaning to win trade dress protection. Because under then-existing Ninth Circuit doctrine Zip Dee had faced a significantly heavier burden in that respect during the California litigation, it would not now be barred from reasserting its rights in the metal slatted design even had it litigated and lost that issue (as it did not) in California (see Restatement § 28(4)).

In sum, each potential application of the doctrine of issue preclusion has been examined in detail and from every angle. In each instance Dometic's position has been found wanting. It has done no better in terms of issue preclusion than on its claim preclusion contention.

### Equitable Estoppel

As was said at the outset of this opinion, the sole focus of Dometic's current motion has been its preclusion arguments (indeed, that limited focus is precisely what caused the characterization of the motion as a Rule 56(b) motion to be inappropriate). Nonetheless it is worth taking a look at the matter from the somewhat broader perspective of equitable considerations generally, for the parties' submissions are replete with references to such considerations: Thus Zip Dee explicitly invokes both the doctrine of judicial estoppel (ZD Supp.Mem. 13) and the "public interest" (*id.* 14), while Dometic couples the "public interest" (D.R.Mem. 18) with basic fairness considerations (*id.* 20). It is therefore worth a brief look at the possible applicability of equitable estoppel, even though the litigants have not spoken in precisely those terms.[30]

Four elements must be present to trigger an equitable estoppel defense (*Krawczyk v. Harnischfeger Corp.*, 41 F.3d 276, 280 (7th Cir.1994)):

(1) the opposing party knowingly misrepresented or concealed a material fact; (2) the complaining party, not knowing the truth, reasonably relied on that misrepresentation or concealment; (3) the com-

---

**28.** It is plain that the "prior success" requirement for judicial estoppel does *not* mean that the party to be estopped must have prevailed on all aspects of the merits in the first proceeding, but simply means instead that the party must have prevailed on the subsidiary question now being contradicted (*In re Cassidy*, 892 F.2d 637, 641 (7th Cir.1990); Rand Boyers, Comment, *Precluding Inconsistent Statements: The Doctrine of Judicial Estoppel*, 80 Nw.U.L.Rev. 1244, 1256 (1986)). There is no question that while Dometic was ultimately held in contempt for using the same advertising materials before and after the injunction (ZD Supp. Ex. O at 8–9), Dometic *did* successfully avoid contempt for its production of the satin finish metal slatted awnings (*id.* at 6).

**29.** This Court has also carefully reviewed Zip Dee's submission to the California court in support of its motion to hold Dometic in contempt (D.Ex. 14). If Zip Dee had argued that it had established rights in the metal slatted design alone at trial, the same concept of judicial estop-

pel might operate against Zip Dee to foreclose its current argument that the issue was never decided. But Zip Dee argued no such thing. Rather Zip Dee contended (*id.* at 16):

Trade dress infringement, unlike trademark infringement, resides in the "multiplicity of similarities", each of which may be nonexclusive with plaintiff so that the products must, as a matter of law, be viewed in their entireties—not dissected, as A & E and Dometic have done.

Thus judicial estoppel will not operate to bar Zip Dee from maintaining its current position before this Court.

**30.** Even had the parties not suggested that equity should play some role in this decision, this Court would be entitled to identify and resolve equitable affirmative defenses sua sponte where as here resolution of those issues does not require additional briefing (see *Coleman v. Ramada Hotel Operating Co.*, 933 F.2d 470, 475 (7th Cir.1991)).

plaining party suffered detriment; and (4) the complaining party had no knowledge or convenient means of ascertaining the true facts which would have prompted it to react otherwise.

In terms of this case Dometic would have to establish (among other things) that Zip Dee "caused or brought about" Dometic's alleged trademark infringement and that Zip Dee should therefore forfeit its right to sue (*IBM Corp. v. Comdisco, Inc.*, 834 F.Supp. 264, 268 (N.D.Ill.1993)).

█ Even such a brief recapitulation of equitable estoppel principles negates their application to the case at hand. Zip Dee did not misrepresent or conceal any material fact, but rather chose a certain litigation strategy (which was ultimately successful) to combat a specific product. And the mere fact that Zip Dee then proceeded against Dometic for contempt when Dometic changed the finish of its awnings but maintained the slatted design, though that effort was held to be an unacceptable extension of Zip Dee's initial victory, *certainly* indicates that Zip Dee did not intentionally lull A & E and Dometic into a false sense of security. Finally, immediately upon being told that the California judgment did not in fact reach that far, Zip Dee commenced registration proceedings with the Trademark Office, directly dispelling any possible belief that Zip Dee was acquiescing in Dometic's production of a metal slatted awning.[31]

### Conclusion

Neither claim preclusion nor issue preclusion stands in the way of Zip Dee's trademark claims against Dometic. While Dometic insists that Zip Dee *could* have attempted to establish rights in its metal slatted awning configuration alone during the earlier California litigation, Dometic's post-judgment awnings were conceived and manufactured *after* that lawsuit and are materially different

from the awnings that were there claimed and found to have infringed Zip Dee's awnings. Stretching (if not breaking) the bounds of good faith pleading, Dometic also impermissibly asserts that Zip Dee *actually* litigated its rights in the slatted metal configuration in the earlier lawsuit. Even on a generous reading of what was decided by the California jury, the record there makes it plain that the issue now presented by Zip Dee was *not* decided. Dometic's motion to narrow the issues is therefore denied.

This action is set for a status hearing at 8:45 a.m. May 26, 1995 (if either party wishes to have that hearing conducted via telephonic conference call, its counsel should communicate with opposing counsel and this Court's staff to make the necessary arrangements). At that time both sides should be prepared to discuss (1) the further proceedings required to deal with Zip Dee's pending motion to dismiss Dometic's Twelfth Affirmative Defense and (2) all remaining matters needed to place the case in a posture for early trial.

Where consent by the owner to the use of his trade-mark by another is to be inferred from his knowledge and silence merely, "it lasts no longer than the silence from which it springs; it is, in reality, no more than a revocable license."

---

**31.** That short time lapse between the California judgment and Zip Dee's initiation of registration proceedings also puts to bed any notion that laches might apply (see *Piper Aircraft Corp. v. Wag–Aero, Inc.*, 741 F.2d 925, 933 (7th Cir. 1984)). As *Menendez v. Holt*, 128 U.S. 514, 524, 9 S.Ct. 143, 145, 32 L.Ed. 526 (1888) (citations omitted) teaches: